UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Chapter 7

MuniVest Services, LLC, <u>et al.</u>,[1]                 Case No. 10-71403

      Debtor.                              Hon. Phillip J. Shefferly

_____/

Gene R. Kohut, Chapter 7 Trustee for                     Adversary Proceeding
MuniVest Services, LLC, <u>et al.</u>,                   No. 12-05921-PJS

      Plaintiff,

v.

Metzler Locricchio Serra & Company, P.C.,

      Defendant.

_____/


**OPINION DENYING IN PART AND GRANTING
IN PART DEFENDANT'S PARTIAL MOTION FOR DISMISSAL**


<u>**Introduction**</u>

The debtors in these jointly administered Chapter 7 bankruptcy cases operated a Ponzi

scheme in which investors lost millions of dollars. The Chapter 7 trustee filed a 16 count complaint

against an accounting firm that provided services to the debtors. The accounting firm filed a motion

_____

    [1] The Debtors are MuniVest Services, LLC, a/k/a MuniVest Group, a/k/a MuniVest Financial Group, a/k/a MuniVest Financial Group of Illinois, LLC, a/k/a MuniVest Financial Group, LLC, a/k/a MuniVest Capital International, LLC, address: 29355 Northwestern Highway, Suite 110, Southfield, Michigan 48034, and Dante DeMiro, a/k/a Dante Thomas Garcia DeMiro, a/k/a Dante T. DeMiro, a/k/a Dante Thomas-Garcia DeMiro, a/k/a Daunte DeMiro. MuniVest Financial Group LLC became a debtor in these proceedings under the Court's Order Granting Chapter 7 Trustee's Motion for Substantive Consolidation of MuniVest Services, LLC and MuniVest Financial Group LLC *Nunc Pro Tunc* to the Petition Date (ECF No. 303).

requesting dismissal of 11 counts of the complaint. For the reasons explained in this opinion, the Court concludes that the motion should be granted as to eight of those counts and denied as to three of those counts. Specifically, the Court grants the motion as to counts eight through ten and twelve through sixteen, and denies the motion as to counts six, seven and eleven.

### Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Counts six and seven of the complaint are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(H), and counts eight through sixteen are core proceedings pursuant to § 157(b)(2)(O). In its motion, the defendant accounting firm challenges the Court's jurisdiction over counts six through sixteen based on Waldman v. Stone, 698 F.3d 910 (6th Cir. 2012). The Court will address that challenge in a separate section of this opinion.

### Facts

For the purposes of the motion to dismiss, the Court accepts as true the following allegations of fact in the complaint filed on November 2, 2012 (ECF No. 1).

Dante DeMiro was the founder and managing director of a business known as MuniVest Services, LLC ("MuniVest"). DeMiro operated MuniVest as a Ponzi scheme. DeMiro perpetrated the scheme by falsely promising investors that he would invest their funds in certificates of deposit and other investment vehicles. To entice investors, DeMiro promised them a rate of return that exceeded similar investments in the marketplace. Once an investor made an investment, DeMiro would generate and transmit financial statements to the investor showing that the investor's principal had earned large amounts of interest that DeMiro had promised. These statements were false. The investors' funds were not used to purchase certificates of deposit and other investment

vehicles.  Instead, the funds were used to pay for personal luxury expenses of DeMiro and to pay

for MuniVest's business expenses necessary to keep the Ponzi scheme going.

DeMiro hired an accounting firm, Metzler Locricchio Serra & Company, P.C. ("Metzler")

to assist him with respect to an offer in compromise of a tax debt with the Internal Revenue Service

("IRS").  Metzler analyzed MuniVest's financial records, prepared tax returns for DeMiro and

MuniVest, and provided other accounting services.  Stephen Johnson, an experienced accountant

and senior manager at Metzler, was responsible for DeMiro's and MuniVest's tax returns.  Johnson

knew that MuniVest purported to invest funds for its investors, but that it did not do so.  Johnson

reviewed line by line the general ledgers that MuniVest's bookkeeper forwarded to him.  The

general ledgers did not show that the funds received by MuniVest were invested for its customers

as promised, but instead showed that the funds were repeatedly used to pay business expenses of

MuniVest and to pay personal luxury expenses of DeMiro.  Metzler prepared tax returns for DeMiro

and MuniVest for 2008 and 2009 using these general ledgers, even though the information contained

on them was inconsistent and incorrect.  Metzler's accounting services enabled DeMiro and

MuniVest to temporarily evade detection of their Ponzi scheme by the IRS and others.  Metzler

violated IRS regulations by signing DeMiro's and MuniVest's tax returns because Metzler knew or

should have known that they were incorrect.  Metzler also failed to comply with the standards

governing the preparation of tax returns established by the American Institute of Certified Public

Accountants ("AICPA").

The IRS conducted an audit of DeMiro's and MuniVest's tax returns for 2008 and 2009 and

discovered that the returns significantly understated their tax obligations.  The IRS assessed

substantial penalties against DeMiro exceeding $2.6 million for the years 2008 and 2009.

On September 16, 2010, DeMiro was arrested by federal agents for orchestrating a Ponzi scheme that defrauded numerous investors. On October 7, 2010, a federal grand jury indicted DeMiro on three counts of bank fraud and two counts of wire fraud. On October 12, 2010, Mona Shores Public Schools, which had invested $3.5 million in the Ponzi scheme, and was the largest victim of the Ponzi scheme, filed involuntary Chapter 7 bankruptcy petitions against both DeMiro and MuniVest (collectively, the "Debtors"). On November 5, 2010, the Bankruptcy Court entered orders for relief granting both involuntary bankruptcy petitions. Gene R. Kohut ("Trustee") was appointed as the Chapter 7 trustee.

On July 12, 2011, DeMiro was sentenced following a guilty plea in which he admitted that he:

- is the founder and managing director of MuniVest;

- dominated and controlled MuniVest, and the MuniVest entities were all alter egos of DeMiro;

- operated a bank and wire fraud Ponzi scheme using the MuniVest entities;

- falsely promised investor clients that he would invest their funds in various certificates of deposit in furtherance of the Ponzi scheme; and

- did not invest their funds as promised, but instead used those funds to purchase personal items, real property, gamble, make payments to other investors in the same Ponzi scheme and make loans to several individuals and a local jewelry store.

DeMiro admitted guilt to all five counts of the indictment. He has now been sentenced and imprisoned.

On September 14, 2011, the Bankruptcy Court entered an order granting the Trustee's motion to approve a coordination agreement between the Trustee and the United States Attorney's

-4-

Office for the Eastern District of Michigan. The coordination agreement expressly provides that the Trustee may pursue avoidance actions in these bankruptcy cases and that such avoidance actions, including the Trustee's action against Metzler, are excluded from those assets forfeited by the Debtors to the United States. As allowed by the coordination agreement, the Trustee filed this adversary proceeding and other similar adversary proceedings to recover assets for the benefit of the victims of the Ponzi scheme and the creditors of these bankruptcy estates.

### Trustee's complaint

The Trustee's complaint contains two broad categories of claims against Metzler. The first category consists of claims asserted by the Trustee on behalf of the Debtors' bankruptcy estates. The following counts in the complaint consist of claims within this category:

Count one: turnover and accounting - § 542

Count two: preferential transfers - §§ 547(b), 550(a) and 551

Count three: claim disallowance - § 502

Count four: actual fraudulent transfers - §§ 548(a)(1)(A), 550(a) and 551

Count five: constructive fraudulent transfers - §§ 548(a)(1)(B), 550(a) and 551

Count six: actual fraudulent transfers - Michigan law and §§ 544, 550 and 551

Count seven: constructive fraudulent transfers - Michigan law and §§ 544, 550(a) and 551

Count eight: accounting malpractice - Michigan law and § 544

Count ten: aiding and abetting fraud - Michigan law and § 544

Count twelve: negligence - Michigan law and § 544

Count fourteen: breach of fiduciary duty - Michigan law and § 544

-5-

Count fifteen: aiding and abetting breach of fiduciary duty - Michigan law and § 544

The second category of claims consists of claims not held by the Debtors' bankruptcy estates, but instead held by five separate investors: Mona Shores Public School District; Boilermakers Local 85; American Postal Workers Union Local 480-81; County of Lapeer; and United Service Credit Union (collectively referred to in the complaint as the "Assignors"). All of the Assignors were victims of the Debtors' Ponzi scheme. Their damages total approximately $7 million. Each of the Assignors entered into a written agreement with the Trustee to assign their claims against Metzler to the Trustee to prosecute for the benefit of the bankruptcy estates. The assignment agreements each state that any proceeds recovered by the Trustee from prosecution of the assigned claims are property of the Debtors' bankruptcy estates, and will be distributed by the Trustee to all creditors in the bankruptcy cases in accordance with the applicable provisions of the Bankruptcy Code. The following counts in the complaint consist of claims of the Assignors against Metzler:

Count nine: Michigan law – accounting malpractice

Count eleven: Michigan law – aiding and abetting fraud

Count thirteen: Michigan law – negligence

Count sixteen: Michigan law – aiding and abetting breach of fiduciary duty

## **Applicable standards under Rule 12(b)(1) and (6)**

Metzler has moved to dismiss eleven of the sixteen counts in the Trustee's complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6), as incorporated in this adversary proceeding pursuant to Fed. R. Bankr. P. 7012.

Fed. R. Civ. P. 12(b)(1) allows a party to assert a "lack of subject matter jurisdiction" defense by motion. If a court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

Fed. R. Civ. P. 8(a)(2), incorporated by Fed. R. Bankr. P. 7008(a), requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The purpose of this pleading standard is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). "In order to entitle the plaintiff to relief, the complaint does not need detailed factual allegations but should identify more than labels and conclusions." Casias v. Wal-Mart Stores, Inc., 695 F.3d 428, 435 (6th Cir. 2012) (internal quotation marks and citation omitted). In Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009), the Sixth Circuit summarized the standard for evaluating a Rule 12(b)(6) motion:

> In Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 1974, 1965 (2007), the Supreme Court said that . . . to survive a motion to dismiss a complaint must contain (1) "enough facts to state a claim to relief that is plausible," (2) more than a "formulaic recitation of a cause of action's elements," and (3) allegations that suggest a "right to relief above a speculative level."

In deciding a Fed. R. Civ. P. 12(b)(6) motion, a "court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted).

### Summary of Metzler's arguments

Metzler's motion makes many arguments, but they can be grouped into three basic categories. First, Metzler argues that five of the counts brought by the Trustee on behalf of the bankruptcy estates must be dismissed because of what is known as the wrongful conduct rule.

-7-

Second, Metzler argues that all of the counts brought by the Trustee on behalf of the Assignors must be dismissed either because the Assignors lack standing to bring such claims or because they fail to state a claim upon which relief can be granted. Third, Metzler argues that eleven of the counts brought by the Trustee, including all of those counts that are subject to the first two groups of arguments, must be dismissed for lack of jurisdiction based upon Waldman v. Stone, 698 F.3d 910 (6th Cir. 2012). The Court will deal with these three groups of arguments in sequence.

## Discussion

1. The wrongful conduct rule

Metzler's motion requests that the Court dismiss counts eight (accounting malpractice), ten (aiding and abetting fraud), twelve (negligence), fourteen (breach of fiduciary duty), and fifteen (aiding and abetting breach of fiduciary duty) under Fed. R. Civ. P. 12(b)(6). Metzler argues that there are a number of different grounds to dismiss these counts, but makes one argument that applies to all of these counts. Metzler begins this argument by stating that all of these counts are based upon state law claims against Metzler that became property of the Debtors' bankruptcy estates under 11 U.S.C. § 541(a)(1) of the Bankruptcy Code as of the commencement of the bankruptcy cases. Metzler concedes that as the representative of the bankruptcy estates under § 323, the Trustee is authorized to prosecute these claims on behalf of the bankruptcy estates. However, Metzler contends that the Trustee stands in the shoes of the Debtors with respect to such claims and has no greater rights in these claims than the Debtors have in them. To the extent that Metzler has defenses to these claims if brought by the Debtors, Metzler argues that such defenses are equally effective against the Trustee. Metzler asserts that under applicable Michigan law, Metzler has a defense to these state law claims based upon the wrongful conduct rule. According to Metzler, because the

-8-

Debtors perpetrated a Ponzi scheme, the wrongful conduct rule precludes the Debtors from being able to prosecute any claims against Metzler for accounting malpractice, aiding and abetting fraud, negligence, breach of fiduciary duty, or aiding and abetting breach of fiduciary duty. Based upon Michigan's wrongful conduct rule, Metzler requests that counts eight, ten, twelve, fourteen and fifteen of the Trustee's complaint all be dismissed.

The Trustee concedes that counts eight, ten, twelve, fourteen and fifteen of his complaint are based upon state law claims. The Trustee does not contest that these claims became property of the bankruptcy estates upon the entry of an order for relief in each of the bankruptcy cases. The Trustee admits that the Debtors perpetrated a Ponzi scheme. The Trustee's own complaint alleges that DeMiro dominated and controlled the Debtors, that they were all alter egos of DeMiro, and that they were all used for the purpose of perpetrating a Ponzi scheme. The Trustee acknowledges that Michigan law recognizes a wrongful conduct rule that generally bars a claim brought by a party who has engaged in wrongdoing against another party, such as an accounting firm, that may have also engaged in wrongdoing. But the Trustee argues that the wrongful conduct rule in Michigan should not apply to bar him from bringing counts eight, ten, twelve, fourteen and fifteen because of equitable considerations based upon the facts in this case. Specifically, the Trustee argues that none of the policies behind the wrongful conduct rule would be furthered by applying the wrongful conduct rule in this case.

Michigan law has "long recognized the existence of the wrongful-conduct rule." Orzel v. Scott Drug Co., 537 N.W.2d 208, 213 (Mich. 1995). Michigan's wrongful conduct rule collectively refers to two common-law maxims. Id. Under the first common law maxim, a plaintiff's claim is barred "[w]hen a plaintiff's action is based, in whole or in part, on his own illegal conduct." Id.

at 212. The second bars a plaintiff's claim "when a plaintiff's action is based on his own illegal conduct and the defendant has participated equally in the illegal activity." Id. This is known as "the doctrine of in pari delicto." Id.

In Orzel, the Michigan Supreme Court explained that the wrongful conduct rule is "rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." Id. at 213. The Orzel court went on to identify some "unacceptable consequences" that could occur if courts chose not to follow the wrongful conduct rule.

> First, by making relief potentially available to wrongdoers, courts in effect would condone and encourage illegal conduct. . . . Second, some wrongdoers would be able to receive a profit or compensation as a result of their illegal acts. Third, and related to the two previously mentioned results, the public would view the legal system as a mockery of justice. Fourth, and finally, wrongdoers would be able to shift much of the responsibility for their illegal acts to other parties.

Id. (citations omitted).

There are two requirements to the application of the wrongful conduct rule in Michigan. The first requirement involves the nature of the conduct. "To implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." Id. at 214. The second requirement involves causation. "For the wrongful-conduct rule to apply, a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." Id. at 215; see also Manning v. Noa, 76 N.W.2d 75, 77-78 (Mich. 1956) (incorporating the causation requirement into Michigan's wrongful conduct rule). To establish causation, a defendant must "show[] that the plaintiff's illegal conduct was a proximate

-10-

cause of the plaintiff's injuries." <u>Orzel v. Scott Drug Co.</u>, 537 N.W.2d at 215. "[A]bsent such a showing, the wrongful conduct rule could not apply to bar a plaintiff's claim." <u>Id.</u>

The Trustee does not deny that Michigan courts follow the wrongful conduct rule. Nor does the Trustee contend that its two requirements are not met in this case. After all, DeMiro pled guilty to all five counts of the indictment against him. The Debtors' conduct in operating a Ponzi scheme was undoubtedly a criminal act. It is beyond challenge that the Debtors' criminal conduct was the proximate cause of the injuries alleged by the Trustee.

Instead, the Trustee argues that under Michigan law, the wrongful conduct rule is a flexible tool of equity that courts are not required to apply in all cases. Where the policies behind the wrongful conduct rule are not present, the Trustee argues that courts are not required to apply it. The Trustee argues that none of the four policies behind the wrongful conduct rule described by the <u>Orzel</u> court would be advanced by applying the rule in this case. First, there is no danger that making relief available to the Trustee in this case would condone or encourage illegal conduct. DeMiro, the wrongdoer, has already been punished in the criminal proceeding against him. Second, permitting the Trustee to recover from Metzler would not permit DeMiro to profit from his illegal conduct, because all of the proceeds recovered by the Trustee would be distributed to the victims of the Ponzi scheme, and not to DeMiro. Third, permitting recovery by the Trustee against Metzler would not cause the public to view the legal system as a mockery of justice. To the extent that the public would have a view about this case at all, the Trustee argues that the public would consider it a mockery to permit Metzler to escape from the consequences of its conduct. Finally, because DeMiro has already been punished by the criminal justice system, permitting recovery by the

-11-

Trustee would not allow DeMiro to effectively shift responsibility for his illegal conduct to any other parties.

Permeating all of the Trustee's arguments is the fundamental point that the wrongdoer, DeMiro, is not the party bringing the action against Metzler. Instead, it is the Trustee, who obviously did not engage in any wrongful conduct, who is bringing the action against Metzler solely for the benefit of the innocent victims of the Debtors' Ponzi scheme. In these circumstances, the Trustee contends that equity allows the Court to decline to apply the wrongful conduct rule.

In reply, Metzler does not debate how any particular policies may or may not be furthered on the facts of this case. Instead, Metzler makes two arguments. First, none of the four policies discussed by <u>Orzel</u> are requirements for application of the wrongful conduct rule in Michigan. Rather, they are the <u>Orzel</u> court's explanation of the historical policies behind the rule, and are not limitations upon the rule itself. Second, Metzler argues that both Michigan courts and the Sixth Circuit Court of Appeals have rejected the very same policy arguments made by the Trustee in similar circumstances.

The Michigan Court of Appeals considered but was not persuaded by similar arguments in <u>MCA Financial v. Grant Thornton</u>, 687 N.W.2d 850 (Mich. Ct. App. 2004). MCA and several subsidiaries were in the mortgage business. These entities originated, serviced and sold residential mortgages. State and federal law enforcement agencies brought criminal charges against MCA's corporate officers, alleging securities fraud and other wrongful conduct. <u>Id.</u> at 852. Some of them were convicted. MCA filed for relief under Chapter 11 of the Bankruptcy Code. As part of a Chapter 11 plan of reorganization, a liquidating agent was appointed by the bankruptcy court. The liquidating agent brought an action in state court against an accounting firm that had performed

-12-

services for MCA. The accounting firm moved to dismiss the action based upon Michigan's wrongful conduct rule. The trial court granted the motion, holding that "the wrongful conduct of some of MCA's officers can be imputed to" MCA, and that such wrongful conduct barred MCA from recovery against the accounting firm. Id. at 853. The liquidating agent appealed and argued that "the wrongful conduct rule should not apply, because none of the 'unacceptable consequences' listed in Orzel would occur . . . if the wrongful conduct rule was not applied" to MCA. Id. at 855. In other words, the liquidating agent argued that the historical policies behind the wrongful conduct rule would not be advanced by its application in that case.

The Michigan Court of Appeals began its opinion by noting that Orzel holds that "Michigan follows the wrongful conduct rule, which precludes a plaintiff from recovering on a claim that is based upon the plaintiff's own wrongdoing." Id. at 853. The Michigan Court of Appeals then rejected the liquidating agent's arguments and made two points. First, it held that the historical policies behind the rule are not required elements. "We begin by noting that the *Orzel* Court was explaining the rationale behind the wrongful-conduct rule and was not establishing a requirement that at least one of the four listed public policy concerns must be present in order to apply the rule." Id. at 855. A party seeking to apply the wrongful conduct rule need not show that such policies would be advanced by applying the rule to their specific case.

Next, the court expressed in dicta its belief that at least three of the four public policy concerns listed in Orzel militated in favor of applying the rule in that case. Id. First, the court stated that not applying the wrongful conduct rule would "condone the wrongdoing." Id. Second, the court stated that even if MCA, the wrongdoer, did not itself profit from its illegal conduct, MCA would effectively still be compensated for its wrongdoing if the court were to allow the losses

-13-

caused by its conduct to be recovered from the accounting firm. Third, failure to apply the wrongful conduct rule would permit MCA to shift responsibility for its wrongdoing to the accounting firm. Finally, with respect to the remaining policy articulated by Orzel, regarding how the public would view the legal system, the MCA court stated that "it is at least equally possible that the public would view it as a mockery that we would allow the active fraud feasors . . . [MCA] to prevail against defendants who merely committed malfeasance." Id. at 855.

The MCA court then paused to consider the fact that it was not the actual wrongdoer who had brought the lawsuit against the accounting firm. Much like this case, the lawsuit was brought by someone who was not involved in the wrongdoing, and was only seeking to recover damages for the innocent victims of the wrongdoing. In MCA, the action was brought against the accounting firm by a liquidating agent under a confirmed Chapter 11 plan of reorganization. In the case at bar, the action is brought by the Trustee in Chapter 7 bankruptcy cases. Ultimately, the MCA court held that this was a distinction without a difference: the wrongful conduct rule still applies.

> Plaintiffs do raise an interesting point that the actual individual wrongdoers would not be benefitting from any recovery from defendants, but that the liquidating agent would disburse any recovery among plaintiffs' innocent investors. This is not an inconsequential point; indeed, it has served a role in many of the decisions cited by plaintiffs. Ultimately, however, we are not persuaded that it is one that should affect the application of the wrongful-conduct rule if the actions of the individual wrongdoers are imputed to plaintiffs. That is, while innocent investors may have been harmed, that would not change the fact that the corporation is treated as having engaged in wrongdoing and, therefore, its investors should not profit from that wrongdoing.

Id. at 855-56.

The MCA court affirmed the trial court's dismissal of the liquidating agent's cause of action against the accounting firm. After stating its holding, it went on to explain that if the accounting

-14-

firm was directly liable to the individual investors for breaching a duty that it may have specifically owed to them under applicable law, the individual investors were not without recourse. Those individual investors would not be barred by the wrongful conduct rule from bringing a direct action against the accounting firm because the individual investors were themselves innocent, and free of any wrongdoing by MCA. Id. at 856.

Despite the rulings in MCA, the Trustee contends that it makes no sense to apply the wrongful conduct rule to an action brought by a Chapter 7 bankruptcy trustee who did not participate in any of the wrongful conduct. The Trustee's position is not without logic or support. There is a substantial body of scholarly work that argues that wrongful conduct and in pari delicto defenses should not apply to bankruptcy trustees. See, e.g., Tanvir Alam, Fraudulent Advisors Exploit Confusion in the Bankruptcy Code: How In pari delicto has been Perverted to Prevent Recovery for Innocent Creditors, 77 Amer. Bankr. Law J., 305, 321 (2003); Jeffrey Davis, Ending the Nonsense: The In pari delicto Doctrine has Nothing to do with What is § 541 Property of the Bankruptcy Estate, 21 Emory Bankr. Dev. J. 519, 534 (2005); and William McGrane, The Erroneous Application of the Defense of In pari delicto to Bankruptcy Trustees, 29 Cal. Bankr. J., no. 2, at 275, 284 (2007); see generally Kathy Bazoian Phelps & Hon. Steven Rhodes, The Ponzi Book: A Legal Resource for Unraveling Ponzi Schemes, § 14.04 at 14-6 (Matthew Bender & Co. 2012) (discussion of application of in pari delicto defense to bankruptcy trustees). Many of these sources argue persuasively that the crux of the in pari delicto doctrine – that courts should not mediate disputes between wrongdoers – simply does not apply to a bankruptcy trustee bringing a debtor's causes of action against third parties under § 541 of the Bankruptcy Code. They also argue that some of the policies historically articulated in support of these defenses – such as deterrence of wrongful conduct – just do not apply

-15-

to an action brought by a bankruptcy trustee. These arguments are especially appealing when a trustee is representing a bankruptcy estate of a debtor that operated a Ponzi scheme where the creditors consist largely of defrauded victims of the Ponzi scheme.

Notwithstanding these arguments, with the exception of the Fifth and Ninth Circuits, every circuit court of appeals has held that under § 541, if in pari delicto would apply under state law to bar claims brought by the debtor, then in pari delicto likewise bars the same claims even if brought by a bankruptcy trustee.[2] The legal underpinning most prevalent in these cases is that a debtor's claims at the commencement of the bankruptcy case become property of the debtor's bankruptcy estate under § 541(a)(1). The trustee therefore prosecutes such claims standing in the shoes of the debtor, subject to any state law defenses that would be applicable to the claims if they were brought by the debtor.

The Sixth Circuit Court of Appeals addressed the in pari delicto doctrine in Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377 (6th Cir. 1997). That case involved a fraudulent initial public stock offering by Dublin Securities. After Dublin Securities filed a Chapter 7 bankruptcy petition, the bankruptcy trustee filed suit against a number of law firms, and the individual attorneys in those law firms, who had represented Dublin Securities. The trustee alleged that the defendants

---

[2] Grayson Consulting Inc. v. Wachovia Securities, LLC (In re Derivium Capital LLC), 716 F.3d 355, 367 (4th Cir. 2013); Peterson v. McGladrey & Pullen, LLP (In re Lancelot Investors Fund, L.P.), 676 F.3d 594, 598 (7th Cir. 2012); Nisselson v. Lernout, 469 F.3d 143, 153 (1st Cir. 2006); Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1149-56 (11th Cir. 2006); Grassmueck v. Am. Shorthorn Ass'n, 402 F.3d 833, 836-37 (8th Cir. 2005); Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 354-60 (3d Cir. 2001); Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377 (6th Cir. 1997); Sender v. Buchanan (In re Hedged-Invs. Assoc., Inc.), 84 F.3d 1281, 1284-86 (10th Cir. 1996); Cf. Sherson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118-20 (2nd Cir. 1991) (analyzing in pari delicto doctrine as a matter of standing and not as a defense).

"knew, or should have known, of the illegal nature of the activities" of Dublin Securities. Id. at 379.

The trustee's complaint alleged "negligence, breach of fiduciary duty, negligent misrepresentation, recklessness, common law fraud, and a right of contribution." Id. The defendants moved to dismiss the complaint based on the doctrine of in pari delicto. The district court granted the defendants' motion, and the trustee appealed.

The Sixth Circuit began its opinion by explaining that "[i]n pari delicto refers to the plaintiff's participation in the same wrongdoing as the defendant. . . . The doctrine is premised upon the equitable principle that [n]o Court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." Id. at 380 (internal quotation marks and citations omitted). The Sixth Circuit next examined the trustee's complaint in which the trustee admitted "that the debtors' own actions were instrumental in perpetrating the fraud." Id. The Sixth Circuit then held that the debtors' "purposeful conduct . . . establishes conclusively that the debtors were at least as culpable as the defendants." Id. Therefore, the Sixth Circuit concluded that application of in pari delicto was proper "to prevent recovery by debtors who conspired with the defendants to defraud innocent investors." Id. at 381.

There are two points about the Dublin Securities opinion that are important to the case at bar. First, although the Sixth Circuit appeared to apply Ohio state law regarding in pari delicto, there is no logical reason why its analysis would be any different with respect to the application of the Michigan wrongful conduct rule in this case. In both instances, state law determines whether the defense applies to a state law claim brought by a debtor who has engaged in wrongdoing against another party who was also engaged in wrongdoing. Second, the Sixth Circuit did not specifically discuss whether there is any distinction in the application of in pari delicto between an action

-17-

brought by a wrongdoing debtor, on the one hand, and the same action, brought by an innocent bankruptcy trustee, on the other hand.  There is no mention of § 541(a)(1), which is the section of the Bankruptcy Code most frequently relied upon by those courts holding that a bankruptcy trustee's right to bring a debtor's cause of action is limited by in pari delicto to the same extent that the wrongdoing debtor's cause of action would be limited by that doctrine.  Instead, the opinion seems to assume that a bankruptcy trustee, who was accused of no wrongdoing, must stand in the shoes of the Chapter 7 debtor who did engage in wrongdoing.

Even though Dublin Securities did not specifically discuss these two points, the opinion unquestionably looked to state law regarding in pari delicto, and applied the doctrine to the Chapter 7 trustee in the same way that it would have been applied against the wrongdoing debtor. In any event, there is nothing in the opinion to support the Trustee's contention that this Court may somehow decline, based upon its own perception of equitable principles, to apply the wrongful conduct rule to the Trustee in this case to the same extent that the wrongful conduct rule would apply to the identical claims if brought by the Debtors.  Although not specifically addressing each and every argument raised by the Trustee in this case, Dublin Securities unequivocally holds that an in pari delicto defense applicable under state law to a claim brought by a wrongdoing debtor, is also applicable to the same claim brought by a Chapter 7 bankruptcy trustee for the wrongdoing debtor.[3]

---

[3]  The only other Sixth Circuit Court of Appeals case discussing the application of the wrongful conduct rule in Michigan in connection with an action brought by a Chapter 7 bankruptcy trustee is NM Holdings Company, LLC v. Deloitte & Touche LLP, 622 F.3d 613 (6th Cir. 2010).  That opinion dealt with the narrow question of whether under Michigan law a corporate agent's knowledge can be inputed to a corporation, and also dealt with what is known as the adverse interest exception to that rule.  Those specific questions are not at issue in the case before this Court.  Although NM Holdings did not expressly deal with the precise issue of

-18-

At oral argument on Metzler's motion, the Trustee made one last appeal to equity. The Trustee argued that Michigan law has long recognized that wrongful conduct and in pari delicto defenses are equitable in nature. Citing <u>Meech v. Lee</u>, 46 N.W. 383 (1890), the Trustee argued that because these defenses are equitable in nature, there are "no hard and fast rules," and courts are free to apply them, or not apply them, based upon the courts' perception of public policy. But courts are not roving equity doers. The public policies of the State of Michigan that support the wrongful conduct rule are articulated by the Michigan Supreme Court in <u>Orzel</u>. This Court is not free to change them, or to reject the application of the wrongful conduct rule where, as here, the required elements of that rule are present. Even in a case like this, where the Debtors unquestionably operated a criminal Ponzi scheme, and where any recovery by the Trustee would go to the victims of that Ponzi scheme, this Court is still required to apply Michigan law as stated by the Michigan Supreme Court.

To be sure, there is appeal to the Trustee's argument that the wrongful conduct rule should not apply to the Trustee. But the law is clear. Michigan subscribes to the wrongful conduct rule. There are two requirements for the rule. First, the plaintiff's conduct must be prohibited under penal or criminal statute. Second, there must be a causal nexus between the plaintiff's illegal conduct and the damages suffered. Both of those requirements are met in this case. That the Debtors' claims against Metzler are not brought by the Debtors, but instead are brought by the Trustee, who himself is guilty of no wrongdoing, and is only seeking recovery for the Debtors' victims, does not change

---

whether the wrongful conduct rule in Michigan bars a Chapter 7 trustee from bringing a cause of action against defendants who are alleged to have acted in concert with the wrongdoing debtor, the opinion did observe that the wrongful conduct rule is "solidly in place in Michigan." <u>Id.</u> at 621.

the outcome. The Trustee takes the claims as property of the estate under § 541(a)(1) of the Bankruptcy Code, subject to applicable defenses to those claims under state law. The Trustee stands in the shoes of the Debtors. Metzler is correct. The wrongful conduct rule in Michigan bars the Trustee from recovery on counts eight, ten, twelve, fourteen and fifteen of his complaint. The Court will enter an order granting Metzler's motion to dismiss those counts.[4]

## 2. The Assignors' claims

Metzler's motion requests that the Court dismiss all of the claims assigned by the Assignors to the Trustee. These claims are set forth in counts nine, eleven, thirteen and sixteen of the Trustee's complaint, and are alleged to have accrued directly in favor of the Assignors, and not in favor of the Debtors. Unlike the Debtors' claims, Metzler does not contend that the Assignors' claims are subject to the wrongful conduct rule under Michigan law. Instead, Metzler makes a number of other arguments for dismissal of these claims. The Court will address each of the counts containing these claims in sequence.

### (a) count nine - malpractice

Count nine of the complaint is titled "Malpractice." It begins by alleging that Metzler committed acts or omissions in connection with the accounting services that it provided to the Debtors. That definitely sounds like malpractice. But then count nine goes on to allege that these acts or omissions "constituted fraud or intentional misrepresentations." (Compl. at ¶ 181.) That

---

[4] Metzler's motion to dismiss also asserts several alternative grounds for dismissal of counts eight, ten, twelve, fourteen and fifteen. Because the Court concludes that those counts must be dismissed based upon application of the wrongful conduct rule, the Court need not reach the alternative grounds asserted by Metzler, and expresses no view about them, except for one. Later in this opinion, the Court will address Metzler's argument that these counts must also be dismissed for lack of jurisdiction based upon <u>Waldman v. Stone</u>, 698 F.3d 910 (6th Cir. 2012).

sounds much more like fraud. The fraudulent statements alleged in count nine do not consist of any statements made by Metzler to the Assignors, but instead consist of the statements made by Metzler to the IRS when Metzler prepared and filed false tax returns for the Debtors.

Metzler requests dismissal of count nine on four separate grounds. First, Metzler argues that the Assignors lack standing to assert a malpractice claim against it because they were not clients of Metzler. Second, Metzler argues that the Assignors lack standing to assert a malpractice claim against it because they were not intended beneficiaries of the accounting services that Metzler provided to the Debtors. Third, Metzler argues that to the extent that count nine is, in substance, a claim for fraud, despite its title of "Malpractice," it fails to state a prima facie claim because it does not allege any material misrepresentation that Metzler made to any of the Assignors. Fourth, Metzler argues that to the extent that count nine is, in substance, a claim for fraud, rather than malpractice, it fails to plead such fraud with particularity.

The Trustee counters that even though the Assignors were not clients of Metzler, they have standing to sue Metzler for malpractice under a specific malpractice statute in Michigan because Metzler has engaged in "fraud or an intentional misrepresentation" by its preparation and filing of false tax returns on behalf of the Debtors with the IRS. Second, the Trustee argues that he has pled fraud with sufficient particularity by identifying the false statements made by Metzler to the IRS.

Metzler has the better arguments.

First, in order to state a claim for malpractice in Michigan, a plaintiff must allege (1) the existence of an accountant/client relationship; (2) negligence in the performance of services by the accountant for the client; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged. Simko v. Blake, 532 N.W.2d 842, 846 (Mich. 1995); Law

Offices of Lawrence J. Stockler, P.C. v. Rose, 436 N.W.2d 70, 80 (Mich. Ct. App. 1989) (explaining that "[m]alpractice denotes a breach of duty owed by one rendering professional services to a person who has contracted for such services"). Count nine is missing two of these elements. It does not allege that the Assignors were clients of Metzler or that Metzler performed any accounting services for the Assignors.

The Trustee does not deny these deficiencies. To get around them, the Trustee relies upon Mich. Comp. Laws Ann. § 600.2962, which is titled "Professional malpractice actions against certified public accountants." The Trustee argues that "this statute unambiguously gives a third party a malpractice claim against an accountant where the accountant has engaged in 'fraud or intentional misrepresentation.'" (Trustee's Br. 10.) The Trustee misconstrues this statute.

Mich. Comp. Laws Ann. § 600.2962(1) reads as follows:

This section applies to an action for professional malpractice against a certified public accountant. A certified public accountant is liable for civil damages in connection with public accounting services performed by the certified public accountant only in 1 of the following situations:

(a) Subject to subsection (2), a negligent act, omission, decision, or other conduct of the certified public accountant if the claimant is the certified public accountant's client.

(b) An act, omission, decision, or conduct of the certified public accountant that constitutes fraud or an intentional misrepresentation.

(c) Subject to subsection (2), a negligent act, omission, decision, or other conduct of the certified public accountant if the certified public accountant was informed in writing directly by the client before commencement of the engagement that a primary intent of the client was for the professional public accounting services to benefit or influence the person bringing the action for civil damages. For the purposes of this subdivision, the certified public accountant shall also separately identify in writing directly to the client, before commencement of the engagement, each person, generic group, or class description that the certified public accountant intends to have rely on the services. The certified public accountant may be held

-22-

> liable only to each identified person, generic group, or class description. The
> certified public accountant's written identification shall include each person, generic
> group, or class description identified by the client as being benefited or influenced.

The statute does not purport to set forth elements for a cause of action for professional malpractice in Michigan. Nor does it "give" anyone a claim for professional malpractice. Instead, the statute "restricts professional malpractice claims against certified public accountants" to the three specific situations set forth in section (1)(a), (b) and (c) of the statute. Ohio Farmers Ins. v. Shamie, 597 N.W.2d 553, 556 (Mich. Ct. App. 1999), vacated in part on other grounds by 611 N.W.2d 800 (Mich. 2000).

Subsection (1)(a) permits an action for professional malpractice against a certified public accountant where the "claimant is the certified public accountant's client." As just noted, the Trustee does not allege that the Assignors were clients of Metzler. So that subsection does not help the Trustee.

Nor does subsection (1)(c). That subsection permits an action for professional malpractice against a certified public accountant by someone who is not the client of the certified public accountant, but only "if the certified public accountant was informed in writing, directly by the [accountant's] client, before commencement of the engagement, that a primary intent of the client was for the professional public accounting services to benefit or influence the person bringing the action for civil damages." Mich. Comp. Laws. Ann. § 600.2962(1)(c). The Trustee does not allege in count nine that the Debtors informed Metzler in writing before Metzler began its services that the primary intent of the Debtors was for these services to benefit the Assignors.

But the Trustee does argue that count nine fits within subsection (1)(b). Subsection (1)(b) permits an action for professional malpractice against a certified public accountant where there is

"[a]n act, omission, decision, or other conduct of the certified public accountant that constitutes fraud or an intentional misrepresentation." The issue then is whether count nine states a claim for fraud or intentional misrepresentation.

In Michigan, the elements of fraud or intentional misrepresentation require (1) that the defendant made a material representation; (2) that it was false; (3) that the defendant knew it was false when made, or made it recklessly without any knowledge of its truth; (4) that the defendant made it with the intention that it should be acted upon by the plaintiff; (5) that the plaintiff did act in reliance upon it; and (6) that the plaintiff suffered injury as a result of such reliance. Kassab v. Michigan Basic Property Ins. Ass'n, 491 N.W.2d 545, 548 (Mich. 1992) (citation omitted), overruled on other grounds by Hayes v. Neshewat, 729 N.W.2d 488 (Mich. 2007).

Count nine does not allege that Metzler made any material representation to any of the Assignors. Nor does it allege that any of the Assignors relied upon any representation made by Metzler, or that they were in any way harmed by relying upon a representation made by Metzler. The only fraud or intentional misrepresentation alleged in count nine is the fraud or intentional misrepresentation that Metzler made to the IRS when it prepared and filed false tax returns. But count nine does not allege that any of the tax returns were ever given to the Assignors, or that they relied in any way upon them or, for that matter, that the Assignors even knew that Metzler had prepared and filed tax returns with the IRS. And it does not allege that Metzler made any representation in the tax returns with the intention that the Assignors would act upon them.

While it is true that subsection (1)(b) permits an action to be brought for professional malpractice against a certified public accountant where there is fraud or intentional misrepresentation, the statute does not eliminate nor provide a substitute for allegations of fraud or

-24-

intentional misrepresentation. It creates no independent cause of action. It only permits a cause of action that otherwise exists for fraud or intentional misrepresentation. Count nine does not allege the essential elements of a cause of action for fraud or intentional misrepresentation in Michigan. Therefore, subsection (1)(b) does not help the Trustee.

In sum, the Assignors were not clients of Metzler, they were not intended beneficiaries of Metzler's services, and they do not allege that Metzler made any fraudulent or false statement to them. Therefore, count nine does not fit within any of the three situations described in Mich. Comp. Laws Ann. § 600.2962(1). Whether treated as a claim for malpractice or for fraud, count nine of the Trustee's complaint fails to plausibly state a claim upon which relief can be granted. The Court will dismiss it.

(b)  count eleven - aiding and abetting fraud

Count eleven of the complaint alleges a cause of action against Metzler for aiding and abetting the Debtors' fraud. Specifically, the Trustee alleges that Metzler knew that the Debtors purported to invest funds for investors, but used the investors' funds to pay for the daily expenses of the Debtors and for personal luxury items for DeMiro. The Trustee further alleges that Metzler provided substantial assistance to the Debtors in the perpetration of their Ponzi scheme.

Metzler argues that count eleven must be dismissed for two reasons. First, count eleven is essentially a duplicate of the Assignors' malpractice claim under count nine, and must be dismissed for the same reasons that the Court has already determined to dismiss count nine. Second, Metzler argues that count eleven fails to allege the essential elements required under Michigan law for an action for aiding and abetting fraud. The Trustee counters that the required elements for aiding and abetting fraud are pled in count eleven. He further asserts that this is precisely the type of action

-25-

against a certified public accountant that is expressly permitted by Mich. Comp. Laws Ann. § 600.2962(1)(b).

The Court agrees with the Trustee.

The Court rejects Metzler's first argument, that count eleven is exactly like count nine. It does not plead malpractice nor does it plead fraud by Metzler. Instead, it pleads a claim against Metzler for aiding and abetting the Debtors' fraud. That is a distinct and independent cause of action in Michigan. In El Camino Resources Ltd. v. Huntington National Bank, 712 F.3d 917, 922 (6th Cir. 2013), the Sixth Circuit Court of Appeals recently discussed Michigan law regarding claims for aiding and abetting tortious conduct. Noting that the Michigan Supreme Court has never expressly recognized a common law claim for aiding and abetting tortious conduct, the Sixth Circuit cited a number of Michigan Court of Appeals decisions that have expressly recognized such claims. Id. Among the aiding and abetting claims that Michigan courts have recognized are aiding and abetting breach of fiduciary duty, Echelon Homes L.L.C. v. Carter Lumber Co., 683 N.W.2d 171, 179 (Mich. Ct. App. 2004), rev'd in part on other grounds by 694 N.W.2d 544 (Mich. 2005); aiding and abetting conversion, Trail Clinic, P.C. v. Bloch, 319 N.W.2d 638, 641 (Mich. Ct. App. 1982); and aiding and abetting trespass, Kratze v. Indep. Order of Oddfellows, 475 N.W.2d 405, 408 (Mich. Ct. App. 1991), rev'd in part on other grounds by 500 N.W.2d 115 (Mich. 1993).

Based upon its review of these Michigan Court of Appeals decisions, the Sixth Circuit concluded that Michigan law does recognize a common law claim for aiding and abetting tortious conduct:

> the Michigan Supreme Court, if faced with the opportunity to do so, would adopt the approach of aiding and abetting as set forth in § 876(b) of the Restatement (Second) of Torts. Section (b) states that "[f]or harm resulting to a third person from the

tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . ."

El Camino, 712 F.3d at 922.  The El Camino court then articulated the elements for an aiding and abetting claim in Michigan as follows: "[p]roof of an aiding and abetting claim therefore requires (1) knowledge of wrongful conduct by the aider/abettor; and (2) substantial assistance of the wrongful conduct by the aider/abettor."  Id.

After holding that Michigan law does recognize a cause of action for aiding and abetting tortious conduct, the Sixth Circuit then stated that the precise issue in the case before it on appeal was "the level of knowledge that is required to prove an aiding and abetting tortious conduct claim under Michigan state law."  Id.  The El Camino court resolved that issue by holding that "actual knowledge is required to prove a claim for aiding and abetting tortious conduct under Michigan law."  Id. at 922 (citing Aetna Cas. & Sur. Co. v. Leahey Constr. Co., Inc., 219 F.3d 519, 533-34 (6th Cir. 2000) (interpreting "knowledge" element of aiding and abetting claims premised on § 876(b) of the Restatement (Second) of Torts to require actual knowledge)).  The El Camino court also noted that "the requirement of actual knowledge has been accepted by the Michigan Supreme Court and the Court of Appeals in the context of statutory aiding and abetting claims."  Id. at 923 (citing Echelon Homes, L.L.C. v. Carter Lumber Co., 694 N.W.2d 544, 547 (Mich. 2005)).  Because it concluded that the defendant in the case before it did not have the requisite actual knowledge, the Sixth Circuit affirmed a summary judgment for the defendant without reaching the second element of aiding and abetting.

In support of the Assignors' aiding and abetting fraud claim in this case, the Trustee alleges the following facts.  Metzler "analyzed Debtors' financial records" and prepared the Debtors tax

returns for the years 2008 and 2009. (Compl. at ¶ 42.) Metzler reviewed the Debtors' general ledgers forwarded to Metzler by the Debtors' bookkeeper (Compl. at ¶ 45), "line by line" and prepared the Debtors' tax returns based on "[the general ledgers]." (Compl. at ¶ 46.) Some of the Debtors' employees told Metzler of their concerns about the Debtors' finances and DeMiro's "constantly wanting money out" and "pulling money out of" the Debtors. (Compl. at ¶¶ 48-50.) Metzler instructed Debtors' bookkeeper on how to "book funds received from investors." (Compl. at ¶ 52.) Metzler was aware that the Debtors could not identify the entity or entities they owed in excess of $825,000, which Metzler acknowledged was "unusual." (Compl. at ¶¶ 80-81.) "Metzler prepared Debtors' tax returns for 2008 and 2009 using the general ledgers despite the fact that the information the Debtors provided was clearly inconsistent, incorrect and/or incomplete." (Compl. at ¶ 82.) Metzler knew that the Debtors purported to invest funds for investors, but instead used the investors' funds to pay for the daily expenses of the Debtors and for personal luxury expenses of DeMiro. (Compl. at ¶ 201.) Metzler provided "substantial assistance" to the Debtors in perpetration of their Ponzi scheme by "continuing to provide accounting services," including the preparation of false tax returns, "despite obvious signs of fraud." (Compl. at ¶ 202.) Metzler "enabled Debtors to temporarily evade the IRS' and others' detection of the Ponzi scheme and furthered the fraud itself." (Compl. at ¶ 204.) Metzler had "actual notice and/or showed deliberate ignorance that a diversion of the Assignors' funds was to occur or was ongoing." (Compl. at ¶ 207.)

Viewing the Trustee's complaint in the light most favorable to the Trustee, and taking all of its well-pleaded factual allegations as true, the Court concludes that count eleven does sufficiently plead the first element of a claim for aiding and abetting fraud: that Metzler had actual knowledge of the Debtors' Ponzi scheme. While not expressly stating the words "actual knowledge," the

allegations in count eleven, taken together, do allege in substance that Metzler had actual knowledge of the Debtors' fraud. That satisfies the first element.

The remaining element for an aiding and abetting fraud claim in Michigan is whether the alleged aider/abettor provided "substantial assistance" to the wrongdoer. This element requires "the plaintiff to show that the secondary party proximately caused the violation, or, in other words, that the encouragement or assistance was a substantial factor in causing the tort." Aetna Cas. & Sur. Co. v. Leahey Const. Co., 219 F.3d 519, 537 (6th Cir. 2000) (internal quotation marks and citations omitted). In Aetna Casualty and Surety Company, the Sixth Circuit noted the following relevant factors to the determination of the substantial assistance element: (i) the nature of the act encouraged; (ii) the amount of assistance given by the defendant; (iii) his presence or absence at the time of the tort; (iv) his relation to the other; (v) his state of mind; and (vi) the duration of the assistance provided. Id. (quoting Temporomandibular Joint (TMJ) Implant Recipients v. Dow Chem. Co., 113 F.3d 1484, 1495 (8th Cir. 1997)) (internal quotation marks omitted).

Count eleven alleges that the substantial assistance in this case consisted not just of ordinary accounting services provided by Metzler, but instead consisted of the preparation and filing of *false* tax returns on behalf of the Debtors with the IRS that enabled the Debtors to "evade third parties' detection of the Ponzi scheme and furthered the fraud itself." (Compl. at ¶ 187.) These allegations encompass much more than routine accounting services. See El Camino Resources, Ltd. v. Huntington Nat. Bank, 722 F.Supp.2d 875, 911 (W.D. Mich. 2010) (recognizing that substantial assistance must mean something more than the providing routine professional services), aff'd by 712 F.3d 917 (6th Cir. 2013). By any measure, the preparation and filing of false tax returns cannot reasonably be viewed as routine accounting services. As explained earlier in the opinion, the

-29-

preparation and filing of false tax returns with the IRS is not enough, by itself, to support the Assignors' direct action against Metzler in this case for fraud or intentional misrepresentation. As a result, the Court dismissed count nine. But the issue under count eleven is different. Here, the question is whether the preparation and filing of false tax returns can be considered to be substantial assistance to the perpetrator of a fraud. The Court concludes that it can be enough to satisfy this element. The Court is persuaded that the Trustee has alleged sufficient factual content to support the allegation that Metzler provided substantial assistance to the Debtors. The Trustee's factual allegations in support of his aiding and abetting fraud claim "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

Even though the Trustee has sufficiently pled the elements of a cause of action for aiding and abetting fraud in count eleven, Metzler argues that it must still be dismissed because it is not an action that is permitted by one of the three situations described in section (1)(a), (b) or (c) of Mich. Comp. Laws Ann. § 600.2962. There is no question regarding either subsection (1)(a) or (1)(c). Neither of them apply. The question of whether subsection (1)(b) applies is a more difficult one. Subsection (1)(b) permits an action against a certified public accountant for an "act, omission, decision or conduct of the certified public accountant that constitutes fraud or an intentional misrepresentation." This subsection makes it clear that the statute does not shield an accountant from liability for fraud. But does it apply where the accountant is not the actor who perpetrates the fraud, and is instead one who aids and abets the fraud?

In the Court's view, aiding and abetting fraud falls within the statutory phrase "act, omission, decision or conduct" that "constitutes fraud." The statute does not state that the accountant must be the actor who perpetrates a fraud. The statute does not limit its application to a specific act of fraud,

but instead refers to acts, omissions, decisions and conduct that constitutes fraud. The Court construes this statute as being sufficiently broad as to include conduct such as aiding and abetting fraud. Moreover, as a matter of policy, if the statute does not insulate an accountant from perpetrating a fraud, there is no logical reason why it should be read as insulating an accountant from liability for helping someone else perpetrate a fraud. The Court concludes that count eleven is within the situation described in subsection (1)(b). Therefore, it is an action permitted by Mich. Comp. Laws Ann. § 600.2962(1).

The Court's only task at this juncture is to determine the sufficiency of the complaint for purposes of this motion to dismiss. The Court finds that count eleven sufficiently alleges that Metzler had actual knowledge of the Debtors' fraud, that Metzler provided substantial assistance to the Debtors in perpetrating the fraud, and that count eleven is an action that is permitted by Mich. Comp. Laws Ann. § 600.2962(1)(b). Because the Trustee has pled enough "[f]actual allegations . . . to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted), the Court will deny Metzler's motion to dismiss count eleven.

(c) count thirteen - negligence

The Trustee alleges in count thirteen that Metzler owed "a duty to exercise reasonable due diligence . . . [when providing] accounting services to the Debtors." (Compl. at ¶ 216.) The Trustee further alleges that Metzler breached that duty by: (i) failing to abide by IRS regulations; (ii) failing to perform in accordance with standards set by AICPA; (iii) preparing and signing false tax returns; and (iv) continuing to provide accounting services to the Debtors despite Metzler's knowledge that the Debtors were using the Assignors' funds to pay for the Debtors' daily expenses and personal luxury items for DeMiro. Metzler moves to dismiss count thirteen for two reasons. First, Metzler

-31-

argues that it owed no duty to the Assignors that can support a claim of negligence. Second, the negligence claim asserted in count thirteen is redundant of and a duplicate of the malpractice claim in count nine. The Trustee responds by falling back on the same arguments that he made in opposition to Metzler's request to dismiss count nine. For the reasons explained in the discussion on count nine, the Trustee's arguments fail again.

To plead a negligence claim, a plaintiff must allege that: "'(1) the defendant owed the plaintiff a legal duty; (2) the defendant breached the legal duty; (3) the plaintiff suffered damages; and (4) the defendant's breach was a proximate cause of the plaintiff's damages.'" Hill v. Sears Roebuck and Co., 822 N.W.2d 190, 195 (Mich. 2012) (quoting Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C., 809 N.W.2d 553 (Mich. 2011)).

Count thirteen does not allege any facts that give rise to a duty by Metzler to the Assignors under Michigan law. Count thirteen seems to be a roundabout way of trying to impose liability upon Metzler for Metzler's malpractice with respect to the accounting services it provided to the Debtors. The Court has already rejected that argument in its discussion of count nine and held that count nine is not an action permitted by Mich. Comp. Laws Ann. § 600.2962(1). The same analysis applies to count thirteen. The Court concludes that count thirteen does not state a claim "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. at 678 (citations omitted). The Court will dismiss it.

(d) count sixteen - aiding and abetting breach of fiduciary duty

In count sixteen, the Trustee alleges that Metzler knew that there was a fiduciary relationship between the Debtors and the Assignors. The Trustee also alleges that Metzler knew that the Debtors breached their fiduciary duty by using the Assignors' funds to pay for the business expenses of the Debtors and the personal luxury items of DeMiro, rather than to invest them for the purposes that

-32-

the Debtors had represented to the Assignors. The Trustee also alleges in count sixteen that Metzler provided substantial assistance to the Debtors, again consisting of the providing of accounting services but, more importantly, the preparation and filing of false tax returns with the IRS.

Metzler does not deny that the Debtors' Ponzi scheme was wrong. Instead, Metzler focuses on the elements of an aiding and abetting breach of fiduciary duty claim in its request for dismissal. First, Metzler argues that count sixteen does not allege that it had knowledge of the Debtors' wrongdoing. Second, Metzler argues that count sixteen does not sufficiently allege that it provided substantial assistance to the Debtors.

As noted earlier, the elements of an aiding and abetting claim are: "(1) knowledge of wrongful conduct by the aider/abettor; and (2) substantial assistance of the wrongful conduct by the aider/abettor." El Camino Resources Ltd. v. Huntington National Bank, 712 F.3d at 922; see also Echelon Homes, L.L.C. v. Carter Lumber Co., 683 N.W.2d 171, 183 (Mich. Ct. App. 2004).

As for the first element, there are many paragraphs in the Trustee's lengthy complaint that relate either directly or inferentially to Metzler's knowledge that the Debtors were not investing the investors funds but were instead spending those funds to pay business expenses or for luxury items for DeMiro. (Compl. at ¶¶ 27; 44, 48-51; 53-54; 56; 69; 72; 80-81.) Paragraph 238, which is part of count sixteen, expressly states that Metzler knew that the Debtors purported to invest the Assignors' funds on their behalf, yet used the funds to pay for daily expenses of the Debtors and to enrich the Debtors and DeMiro. These allegations satisfy the element of actual knowledge.

As for substantial assistance, the Court incorporates its prior analysis of the substantial assistance element of the Trustee's count eleven to its consideration of count sixteen. Both count eleven and count sixteen involve aiding and abetting claims. The only difference between these

-33-

counts involves the underlying tortious conduct engaged in by the Debtors. For both counts, the Trustee's complaint has sufficient factual content to plead the substantial assistance element by pleading not just that Metzler provided accounting services, but that Metzler prepared and filed false tax returns.

The Court is persuaded that count sixteen sufficiently pleads a claim for aiding and abetting breach of fiduciary duty. But is count sixteen permitted by Mich. Comp. Laws Ann. § 600.2962(1) as one of the three situations described in subsection (1)(a), (b) or (c)? The aiding and abetting claim set forth in count sixteen differs in one very important respect from the aiding and abetting claim set forth in count eleven. Count eleven is based upon the Assignors' claim that Metzler aided and abetted *fraud*. In contrast, count sixteen is based upon the Assignors' claim that Metzler aided and abetted *breach of fiduciary duty*. At the end of the section of this opinion dealing with count eleven, the Court considered whether the Assignors' aiding and abetting fraud claim in count eleven was permitted by Mich. Comp. Laws Ann. § 600.2962(1). The Court concluded that it was, finding that it was within the situation described in § 600.2962(1)(b). The Court reaches a different conclusion with respect to count sixteen.

In <u>Yadlosky v. Grant Thornton L.L.P.</u>, 120 F.Supp.2d 622 (E.D. Mich. 2000), investors who were defrauded by MCA Financial Corporation brought a lawsuit against MCA's accountants. The lawsuit contained many counts. One of the claims was for breach of fiduciary duty. The court granted the accounting firm's motion to dismiss the breach of fiduciary duty claim because it was not permitted by Mich. Comp. Laws Ann. § 600.2962. The court specifically found that the plaintiff's breach of fiduciary duty claim was not within any of the three situations described in Mich. Comp. Laws Ann. § 600.2962(1). <u>Id.</u> at 634.

Following Yadlosky, if a breach of fiduciary duty claim against a certified public accountant is barred by Mich. Comp. Laws Ann. § 600.2962(1), it is difficult for the Court to conceive of how a claim for aiding and abetting a breach of fiduciary duty would not likewise be barred by the same statute. Unlike liability for an act, omission, decision, or conduct that constitutes fraud or intentional misrepresentation, which are expressly referenced in subsection (1)(b), there is no counterpart reference in the statute for conduct that constitutes breach of fiduciary duty. While the Court reads the situation described in subsection (1)(b) as sufficiently broad to extend to conduct that aids and abets fraud, as well as to the actual perpetration of fraud, there is no comparable situation described in Mich. Comp. Laws Ann. § 600.2962(1) that can be read to permit a claim for aiding and abetting breach of fiduciary duty.

In discussing count sixteen, the Trustee states in his brief that "MCL § 600.2962 does not apply to aiding and abetting claims." (Trustee's Br. 18.) The Trustee does not offer any citation or elaboration for this statement, but this statement highlights a drafting problem in the statute. The Trustee's statement appears to rest on the unstated premise that aiding and abetting claims simply do not constitute "an action for professional malpractice," which is all that the statute purports to regulate. True enough. As discussed earlier in the opinion, the elements of a claim in Michigan for aiding and abetting are different than the elements of a claim in Michigan for professional malpractice. That would seem to suggest that the Trustee is correct. The problem with this construction is that it fails to consider subsection (1)(b) of the statute.

Subsection (1)(b) expressly permits an action for fraud or intentional misrepresentation. As discussed in this opinion, the elements of an action for fraud or intentional misrepresentation in Michigan are also different than the elements of an action for professional malpractice. If the statute

-35-

does not restrict any actions against accountants arising out of public accounting services other than professional malpractice, why would it be necessary for the statute to expressly permit an action for fraud or intentional misrepresentation to proceed under subsection (1)(b)? If, as the Trustee contends, an action for aiding and abetting breach of fiduciary duty is outside of the statute's reach, then an action for fraud or intentional misrepresentation must also be equally outside of the statute's reach. But an action for fraud or intentional misrepresentation is obviously not outside of the statute's reach because, if it were, subsection (1)(b) would be wholly unnecessary. Stated another way, the Trustee's contention that the statute does not restrict actions that have elements different than the elements of professional malpractice, effectively reads out of the statute the express permission granted in subsection (1)(b) for an action for fraud or intentional misrepresentation.

Well established principles of statutory construction require the Court to read the statute in a way that gives meaning to all of its provisions. The Trustee's reading of the statute – that aiding and abetting claims are not covered at all by the statute – renders subsection (1)(b) superfluous. A better reading of the statute, and one which gives meaning to all of its provisions, is that Mich. Comp. Laws Ann. § 600.2962(1) restricts any action against a certified public accountant where the action is based upon public accounting services performed by such accountant, except as expressly permitted in the three specific situations described in the statute. Fraud is one of those situations. Breach of fiduciary duty is not. The Court reads the fraud situation described in subsection (1)(b) broadly enough to also include aiding and abetting fraud, as well as the perpetration of fraud. That is why the Court did not grant Metzler's motion to dismiss count eleven. But there is no breach of fiduciary duty situation described in the statute that can be read similarly in a manner that would permit a claim against Metzler for aiding and abetting breach of fiduciary duty. The statute does not

permit an action for breach of fiduciary duty. It likewise does not permit an action for aiding and abetting a breach of fiduciary duty. Therefore, even though count sixteen does sufficiently plead the elements of an aiding and abetting breach of fiduciary duty cause of action in Michigan, it is a cause of action that is not permitted under Mich. Comp. Laws Ann. § 600.2962(1). Accordingly, the Court will dismiss count sixteen.

3. <u>Waldman v. Stone</u>

Metzler makes a final perfunctory argument that counts six through sixteen involve state common law claims that are unrelated to the bankruptcy proceeding. Citing <u>Waldman v. Stone</u>, 698 F.3d 910 (6th Cir. 2012), Metzler concludes that, as a result, this Court "lacks jurisdiction over these state law claims."[5] The Court disagrees.

<u>Waldman v. Stone</u> does not hold that a bankruptcy court lacks *subject matter jurisdiction* when the congressional allocation of authority is found to be unconstitutional. "Section 157 [of title 28] allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction." <u>Stern v. Marshall</u>, – U.S. – 131 S.Ct. 2594, 1607 (citing 28 U.S.C. §§ 157(b)(1), (c)(1)). As a result, Metzler's request for dismissal based upon lack of jurisdiction must be denied.

However, the Court is not unmindful of the holdings of <u>Stern</u> and <u>Waldman</u>, and how they explain the limits on this Court's constitutional authority to enter a final judgment or order on what Metzler describes as purely state common law claims. This opinion, and the order that the Court

---

[5] As explained throughout this opinion, Metzler made a number of arguments in support of its request for dismissal of counts eight through eighteen. The lack of jurisdiction argument discussed in this section of the opinion is the only basis for Metzler's request to dismiss counts six and seven of the complaint.

intends to enter pursuant to this opinion, do not constitute final orders and judgments with respect to counts six through sixteen of the Trustee's complaint. "A final decision is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Archie v. Lanier, 95 F.3d 438, 441 (6th Cir. 1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)) (finding that "the district court's partial denial of [the defendant's] motion to dismiss . . . [the] complaint" was not a final order). This opinion and the order to follow it do not end the litigation between the Trustee and Metzler.

Further, even if the Court lacks constitutional authority to enter a final judgment in this adversary proceeding with respect to the state common law claims against Metzler, the proper remedy is not dismissal for lack of jurisdiction. Instead, the Court should treat the matter similar to the way that it treats non-core proceedings, and issue proposed findings of fact and conclusions of law, as directed by Waldman. 698 F.3d at 923 (remanding and directing that "the bankruptcy court shall recast its final judgment as to these [state law] claims as proposed findings of fact and conclusions of law, which the district court shall review de novo").

For these reasons, the Court will deny Metzler's request to dismiss counts six through sixteen for lack of subject matter jurisdiction.

### Conclusion

The Court grants Metzler's motion to dismiss the Trustee's claims in counts eight (accounting malpractice), ten (aiding and abetting fraud), twelve (negligence), fourteen (breach of fiduciary duty), and fifteen (aiding and abetting breach of fiduciary duty) based upon application of the wrongful conduct rule. As for the Assignors' claims, the Court grants Metzler's motion to dismiss counts nine (malpractice), thirteen (negligence), and sixteen (aiding and abetting breach of

-38-

fiduciary duty).  The Court denies Metzler's motion to dismiss the Assignors' claims in count eleven

(aiding and abetting fraud).  Finally, the Court denies Metzler's motion to dismiss counts six through

sixteen based upon <u>Waldman v. Stone</u>.  The Court will enter an appropriate order consistent with

this opinion.

For publication

.

**Signed on October 15, 2013**

                                        _____/s/ Phillip J. Shefferly_____
                                        **Phillip J. Shefferly**
                                        **United States Bankruptcy Judge**